IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WALTER WINGARD,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )     CASE NO. 2:11-CV-45-WKW
                                   )              [WO]
LÄNSFÖRSÄKRINGAR AB,               )
LÄNSFÖRSÄKRINGAR ALLIANCE          )
AB, and LF KRONOBERG,              )
                                   )
        Defendants.                )

## MEMORANDUM OPINION

Plaintiff Walter Wingard, as the assignee of the insureds' rights, brings claims

against Defendant LF Kronoberg ("LFK") for breach of an insurance contract and

negligent failure to settle, and to enjoin a related lawsuit filed by LFK in a Swedish

court.  Before the court is Defendant LFK's Motion to Dismiss (Doc. # 43), which is

accompanied by a supporting brief and evidentiary submissions.  (Docs. # 44 & 45.)

Plaintiff filed a response (Doc. # 59), to which LFK replied (Doc. # 62).

LFK moves to dismiss this action for lack of personal jurisdiction and for

improper venue based upon the policy's forum selection clause that designates the

courts of Sweden as the appropriate venue.  Plaintiff claims that LFK has sufficient

contacts with the state of Alabama to justify the imposition of personal jurisdiction,

and that the forum selection clause is unenforceable.  Upon careful consideration of

counsel's briefs, the relevant law, and the record as a whole, the court previously denied LFK's Motion to Dismiss. (Doc. # 66.) This is the opinion referenced in that Order.

## I.  SUBJECT MATTER JURISDICTION

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, and there is complete diversity of citizenship between Plaintiff and Defendants.  The parties do not dispute subject matter jurisdiction, and the record establishes an adequate basis for it.

## II.  STANDARDS OF REVIEW

**A.**     **<u>Lack of Personal Jurisdiction</u>**

A Rule 12(b)(2) motion tests the court's exercise of personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2).  Where a Rule 12(b)(2) motion to dismiss is decided without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction over a non-resident defendant. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  A plaintiff demonstrates a "prima facie case of personal jurisdiction" by submitting sufficient evidence to defeat a motion made pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006).  Allegations in the complaint are presumed true, if uncontroverted by the defendant's evidence. *Madara*, 916 F.2d

2

at 1514.  "When the parties submit conflicting affidavits, the court, in the absence of an evidentiary hearing, 'is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff.'"  *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, No. 10–15840, 2012 WL 4207303, at *3 (11th Cir. Sept. 21, 2012) (quoting *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990)).

## B.   <u>Improper Venue</u>

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides for dismissal for "improper venue."  A Rule 12(b)(3) motion is the proper way to invoke a forum selection clause.  *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 n.5 (11th Cir. 2001). A Rule 12(b)(3) challenge based on a forum selection clause presents a pure question of law.  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290–91 (11th Cir. 1998).  "The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general."  *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)).

### III.  BACKGROUND

This lawsuit arises from LFK's actions in defending its insured, Texo, Inc., and Texo AB (collectively "Texo"), and LFK's alleged breach of an insurance contract and negligent failure to settle a wrongful death action brought against Texo in an Alabama court.  The deceased is Beverlyn Wingard.  Ms. Wingard worked for Albany International ("Albany") at its plant in Montgomery, Alabama.  She operated a machine known as a warper during the course of her employment with Albany.  The warper was not properly guarded, and as a result, on January 28, 2008, Ms. Wingard died when her body was pulled into the rotating parts of the machine.  Plaintiff, as the administrator of Ms. Wingard's estate, filed an action against Texo under the Alabama Wrongful Death Act, *see* Ala. Code § 6-5-410, alleging that Texo negligently or wantonly inspected, repaired, or altered the warper machine owned by Albany (the "underlying action").[1]  Texo filed claims under its general liability insurance policy with LFK ("the policy").

LFK is an independent mutual insurance company incorporated under the laws of and headquartered in Sweden.  It has no offices, officers, employees, or agents in

---

[1] Since his sister's death, Plaintiff has worn two litigation hats.  The first hat is that of the administrator of Ms. Wingard's estate.  Wearing that hat, Plaintiff instituted the underlying action.  In this litigation, Plaintiff wears a different hat – the hat of the assignee of Texo's rights under the LFK policy.  It is important to keep that distinction in mind.

Alabama.  It is not licensed to do business in the state of Alabama.  It has never issued an insurance policy to an individual or entity domiciled in Alabama and has never insured an Alabama citizen.  Notwithstanding its physical absence in Alabama, LFK issued a general liability policy to Texo that insured risks arising from Texo's activities in the United States and thus necessarily in Alabama, pursuant to a worldwide territory-of-coverage clause.[2]   LFK concedes that nothing in the policy would have precluded Texo from conducting insured activities in the state of Alabama.

Pursuant to the insurance policy, LFK defended Texo in the underlying action brought by Plaintiff (wearing his first litigation hat) against it in an Alabama court. It hired Länsförsäkringar AB to manage the Alabama litigation process.[3] (*See* Lars Gustafsson's Dep. 5, 7; *see also* Fredrik Daveby's Dep.'s 5–6 (testifying that LFK "purchased . . . legal services from [Länsförsäkringar AB] in connection with" the underlying action).)  Länsförsäkringar AB contacted a legal firm in New York, and that firm recommended an Alabama law firm.  LFK funded the defense by paying the fees incurred by the Alabama law firm.  LFK also actively participated in discussions

---

[2] Texo AB is the named insured and Texo, Inc., is as an additional insured.  Texo, Inc., is a United States corporation, and Texo AB is a Swedish corporation.

[3] LFK owns an interest in Länsförsäkringar AB.  (*See* Daveby's Dep. 5–6 (testifying that LFK is one of several mutual insurance companies that owns Länsförsäkringar AB).)

with Länsförsäkringar AB regarding the progress of the litigation and received advice and instructions from Länsförsäkringar AB. (*See* Gustafson's Dep. 7.)  LFK also allegedly received, but refused, an offer to settle the underlying action for the applicable policy limits.[4]

After a nonjury trial in the underlying action to which Texo agreed, the trial court found Texo liable under the Alabama Wrongful Death Act.  The Alabama Wrongful Death Act only permits the recovery for punitive damages,[5] and, accordingly, judgment was entered in Plaintiff's favor for punitive damages in the amount of $5,250,000, an amount that exceeds Texo's policy limits.  LFK denied Texo's indemnity claim for payment of the judgment on the basis of the policy's punitive damages exclusion. (Certificate of Insurance (Ex. G to Doc. # 59).)  At some point, Texo, Inc., and Texo AB assigned their contractual rights with LFK to Plaintiff in accordance with § 8-5-20 of the Alabama Code.  This lawsuit arises from that assignment of rights.

---

[4] The policy limits were 20,000,000 Swedish Krona, approximately $3,000,000.00, for General Liability and Products Liability.  *See* http://www.xe.com/currency tables/ ?from=SEK&date=2008-01-01 (last visited Oct. 22, 2012).

[5] The Alabama Wrongful Death Act is "unique" in that prevailing plaintiffs may recover "'*only* punitive damages.'"  *Entrekin v. Internal Med. Assocs. of Dothan, P.A.*, 689 F.3d 1248, 1253 (11th Cir. 2012) (quoting *Black Belt Wood Co. v. Sessions*, 514 So. 2d 1249, 1262 (Ala. 1986)).

Standing in the shoes of Texo as its assignee, Plaintiff brings three claims against LFK.[6]   In Count I, Plaintiff alleges that LFK breached the contract of insurance with Texo by failing to pay the underlying judgment.   Specifically, Plaintiff alleges that LFK violated Alabama's public policy by relying on the punitive damages exclusion to deny indemnity coverage for the underlying judgment.   Plaintiff requests "all amounts under the insurance policy including the equivalent of $5,250,000.00 . . . ."   (Am. Compl. ¶ 22.)   In Count II, seeking unspecified damages, Plaintiff alleges that LFK's refusal to settle the underlying action within the applicable policy limits was negligent and exposed Texo to damages liability exceeding the policy limits.   In Count III, Plaintiff alleges that in September 2011, LFK sued Plaintiff in a Swedish court "in an effort to usurp this court's authority . . . ."   (Am. Compl. ¶ 31.)   Plaintiff requests an order enjoining Defendants from prosecuting the action pending in the Swedish courts.

## IV.  DISCUSSION

Part A addresses LFK's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and examines whether the due process requirements are satisfied for the

---

[6] Plaintiff claims against Defendants Länsförsäkringar AB and Länsförsäkringar Alliance AB are not implicated in the present motion.

7

court's exercise of specific jurisdiction over LFK.  Part B addresses LFK's Rule 12(b)(3) motion to dismiss for improper venue based upon the forum selection clause.

## A.   **Personal Jurisdiction**

"When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that the exercise of personal jurisdiction over the defendant comports with the certain fundamental requirements."[7]  *Brannon v. Fin. Am., LLC*, 483 F. Supp. 2d 1136, 1139 (M.D. Ala. 2007).  In diversity cases, a federal court considering whether it may exercise personal jurisdiction over a non-resident defendant faces two separate constraints:  the long-arm statute of the state in which the federal court resides and the Due Process Clause of the Fourteenth Amendment. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).  For a federal court in Alabama, these considerations are merged, as "Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Id.*  (citing Ala. R. Civ. P. 4.2(b); *Sieber v. Campbell*, 810 So. 2d 641, 644 (Ala. 2001)).

The due process inquiry consists of two parts.  First, the defendant must have "certain minimum contacts" with the forum state.  *Burnham v. Superior Court of*

---

[7] The jurisdictional issue is being considered based upon the pleadings and evidence.  In the exercise of its discretion, the court declines to hold an evidentiary hearing, and the parties have not requested one.  *See Madara*, 916 F.2d at 1514.

*Calif.*, 495 U.S. 604, 618 (1990).  Two types of minimum contacts can form the basis for personal jurisdiction:  general and specific.  *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006).  If minimum contacts exist, then the exercise of jurisdiction over the defendant must "not offend 'traditional notions of fair play and substantial justice.'"  *Burnham*, 495 U.S. at 618 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  "This two-part test embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign."  *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993).

LFK asserts that subjecting it to personal jurisdiction in Alabama would violate the Fourteenth Amendment's Due Process Clause because Plaintiff cannot show either general or specific jurisdiction and because exercising personal jurisdiction over LFK would not comport with traditional notions of fair play and substantial justice.  Plaintiff concedes that general personal jurisdiction is absent.  The issue is, therefore, one of specific personal jurisdiction.

### 1.    *Minimum Contacts*

Specific jurisdiction requires (1) that a defendant's contacts with the forum state be related to the cause of action or give rise to it; (2) involve "some act by which

the defendant purposefully avails itself of the privilege of conducting activities within the forum," and (3) "be such that the defendant should reasonably anticipate being haled into court there." *Sloss Indus. Corp.*, 488 F.3d at 925.

### a. Contacts that Relate to or Give Rise to the Cause of Action

LFK contends that Plaintiff's alleged injuries arose out of Texo's modifications of the warper that caused Ms. Wingard's death, not out of the insured-insurer relationship between LFK and Texo. LFK further argues that this lawsuit constitutes a direct action by the insured's tort claimant (Ms. Wingard's administrator) for recovery of the $5.25 million judgment from the insurer (LFK). Based on these contentions, LFK argues that it has no contacts that are related to the causes of action against it or that gave rise to those causes of action.

As a preliminary matter, LFK's contention reflects a fundamental misunderstanding of the nature of this lawsuit.[8] Plaintiff is not proceeding in this lawsuit in his capacity as the administrator of Ms. Wingard's estate. This is the hat he wore in the underlying action, *see supra* note 1. Contrary to LFK's assertion, Plaintiff has not invoked Alabama's direct action statute against LFK to reach and apply the policy's proceeds for satisfaction of the $5.25 million judgment. *See* Ala. Code § 27-23-2; (*see also* LFK's Reply Br. 10 (continuing to assert erroneously that

---

[8] The court will presume that LFK's misunderstanding is unwitting.

Plaintiff, as the representative for Ms. Wingard, "has filed this declaratory judgment action regarding insurance coverage for Texo . . . under Alabama's Direct Action Statute").)  Instead, Plaintiff is suing in his second hat, which is his capacity as the assignee of Texo's rights under the insurance contract at issue.  (*See* Am. Compl. ¶ 5); *see also Green Tree Fin. Corp. v. Channell*, 825 So. 2d 90, 95 (Ala. 2002) (When a party assigns its rights under a contract to an assignee, the assignee steps into the shoes of the assignor and possesses all the rights the assignor originally possessed.).

This lawsuit is not about "what caused Plaintiff's [decedent's] injuries" (Doc. # 44, at 18), but rather what caused Texo's injuries.  The causes of action seek recovery for LFK's alleged breach of its insurance contract with Texo for failing to provide indemnity for any part of the $5.25 million judgment and for LFK's alleged negligent failure to settle the underlying action for the policy limits.  The personal jurisdiction issue is whether LFK's contacts with Alabama are related to these causes of action.  Given LFK's apparent confusion, LFK has not offered any meaningful analysis as to whether it has contacts with Alabama that relate to or give rise to the causes of action, and the court is not obligated to formulate arguments on its behalf.

Eleventh Circuit precedent establishes, however, that one of LFK's contacts with Alabama is LFK's inclusion of Alabama within the territory-of-coverage clause

in the policy.  *See McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005), *abrogation recognized on other grounds in Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010).  Absent any argument to the contrary, the court finds that this contact relates to and arises out of the causes of action. That is so because the causes of action are steeped in LFK's contractual obligations under the policy and relate to its coverage conduct with respect to the underlying action litigated in Alabama.  In other words, had it not been for LFK's refusal to settle or provide indemnity for the judgment in the underlying action, Plaintiff would not have needed to bring this lawsuit as the assignee of Texo's contractual rights under the policy.  *Cf. McGow*, 412 F.3d at 1214 (holding that the insurance company's contact with the forum state was established based upon the policy's territory-of-coverage clause and that the contact was related to the insured's action for damages covered by the policy).

### b.   *Purposeful Availment*

The defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it . . . relate to whether it can

be said that the defendant's actions constitute 'purposeful availment.'" *Sea Lift, Inc.*

*v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 993 (11th Cir. 1986).

LFK argues that it has not purposefully availed itself of the privilege of conducting activities within the state of Alabama based upon its absence of a physical presence in the state of Alabama. LFK contends further that its insurance contract with Texo is insufficient to create any connection between it and the state of Alabama, notwithstanding that Texo ultimately engaged in activities in Alabama that led to the underlying action. LFK asserts that even if the insurance contract is deemed a contact, the contract alone is insufficient to subject it to a lawsuit in Alabama, absent additional contacts that are incidental to an ongoing contractual relationship. Countering LFK, Plaintiff focuses on the worldwide territory-of-coverage clause and the nature and extent of LFK's activities in the actual defense of Texo in the underlying action litigated in an Alabama court. Plaintiff contends that this is enough to demonstrate purposeful availment. The court agrees with Plaintiff based upon *McGow*.

In *McGow*, the Eleventh Circuit examined whether a territory-of-coverage clause in an insurance policy amounted to purposeful availment for purposes of subjecting the insurer to suit in the coverage territory. *See* 412 F.3d at 1214. Following the reasoning of the Fourth, Sixth, Eighth, and Ninth Circuits, the Eleventh

13

Circuit answered in the affirmative, agreeing that presumably an insurer receives higher premiums for providing broad territorial coverage and that an insurer desiring to avoid suit in the forum state need only include that state in a policy territory exclusion. *See id.* at 1215 (citing *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.3d 282, 287 (4th Cir. 1987)); *see also Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 791 (8th Cir. 2005) (observing that the insurer "presumably offered a broad 'coverage territory' in order to make its policies more marketable and profitable"). Based upon this rationale, the Eleventh Circuit concluded that the insurer purposefully availed itself of the privileges in the state of Georgia. By including the state of Georgia as a covered territory, the insurer "purposefully sought to provide coverage for accidents occurring in Georgia, with full knowledge that litigation could result and that [the insurer] could be haled into court in Georgia and required to make payments in Georgia based on that coverage." *McGow*, 412 F.3d at 1215. Additionally, the insurer "purposefully included Georgia in its coverage territory in order to charge higher premiums." *Id.*

Here, LFK's policy issued to Texo included a worldwide territory-of-coverage provision without a territorial limitation. That inclusion necessarily meant that Alabama was a covered territory, and at no time has LFK denied that this territory-of-coverage clause included Alabama. (*See, e.g.*, Lars Gustafson's Dep. 22 (affirming

14

that the policy's worldwide territory-of-coverage provision contained no "exclusion just based on the fact that the accident occurred in Alabama").)  LFK also has not disputed that the purpose of the insurance policy was to protect Texo from the consequences of lawsuits brought against it anywhere in the world.  And it can be presumed that LFK was able to assess premiums at a higher rate for LFK's increased risk in insuring a broad geographic area.  LFK has "indicated its willingness" to litigate in Alabama by contractually obligating itself to defend its insured against certain claims arising from Texo's activities in Alabama. *Rossman*, 832 F.2d at 286. In other words, the "expectation of being haled into court in [Alabama] [was] an express feature of its policy." *Id.*

LFK not only included Alabama in the policy's territory coverage, but also played a pivotal part in orchestrating the defense in the underlying action. Specifically, LFK provided Texo a defense in the underlying action in an Alabama court, funded the litigation by paying Texo's attorney's fees, made strategic decisions about settlement and trial strategy, asserted defenses under Alabama law, made the decision to deny indemnity coverage for any part of the $5.25 million Alabama verdict, and based that denial on Alabama's statutory classification of damages as punitive only.

LFK seeks to distance itself from the Alabama litigation by hiding behind Länsförsäkringar AB whom LFK hired to manage the Alabama litigation, but LFK ignores agency principles that are relevant in the personal jurisdiction analysis. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 n.22 (1985) (recognizing for purposes of personal jurisdiction that commercial activities performed on a party's behalf "may sometimes be ascribed to the party"); *see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55–60 (1st Cir. 2002) (agent's acts may be attributed to principal for jurisdictional purposes when, under standard agency principles, agent is authorized to act on behalf of principal or principal ratifies agent's conduct). LFK has not refuted the existence of an agency relationship between it and Länsförsäkringar AB. LFK has offered no reason at this juncture why Länsförsäkringar AB's contacts should not be imputed to LFK based upon an actual or apparent agency relationship between these two entities; hence, its argument that its only contacts with Alabama are due to the unilateral activities of a third party (*i.e.*, Länsförsäkringar AB) is unavailing.

Accordingly, LFK has purposefully availed itself of the privileges of conducting activities in Alabama. In doing so, LFK "received the benefits and protection of the laws of the state." *Int'l Shoe*, 326 U.S. at 320.

16

### c.   *Reasonable Anticipation of Being Haled into an Alabama Court*

In *McGow*, the Eleventh Circuit held that the insurer "reasonably should have foreseen being haled into court in Georgia because its policy covered the entire United States" and also observed that the "expectation of being haled into court in a foreign state [was] an express feature of its policy."   412 F.3d at 1215 (internal citation and quotation marks omitted).  The court does not question LFK's assertion that Texo is the first insured in LFK's 210-year history to make a claim arising from activities in the United States.  This apparent rarity does not negate, however, the reasonable foreseeability of suit in Alabama, as *McGow*'s holding focused on the insurer's affirmative act of including the forum state as a covered territory, *see id.*, not on the probability that a claim actually would arise from an accident occurring in a covered forum.  Here, because Alabama is within the territory-of-coverage clause in the policy between LFK and Texo, LFK should have been aware that Texo's activities could have resulted in an accident in Alabama and that LFK may have to litigate issues arising from its contractual obligations under the policy in an Alabama court.

### 2.   *Traditional Notions of Fair Play and Substantial Justice*

The second part of the federal due process analysis requires a court's exercise of personal jurisdiction to comport with traditional notions of fair play and substantial justice. In *Sloss Industries*, the Eleventh Circuit explained that in measuring the

17

fairness of the exercise of personal jurisdiction over a foreign defendant, courts should weigh (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) interests of the judicial systems of the United States and the foreign country in obtaining the most effective resolution, and (5) shared interests of the United States and the foreign country in furthering fundamental substantive policies. *See* 48 F.3d at 933.

LFK's brief devotes less than two pages to discussion of fair play and substantial justice and focuses only on a single factor:  the burden on LFK in litigating in Alabama.  LFK argues that it would be a "great inconvenience" and a "heavy burden" on LFK to litigate in Alabama. (Doc. # 44, at 27–28.) Undoubtedly, there will be some burden on LFK, a Swedish company, to defend this action in an Alabama court.  LFK cites no authority, however, establishing that this burden alone on a foreign defendant is enough to offend traditional notions of fair play and substantial justice.  This is particularly so given that, based upon application of *McGow*, LFK has indicated its amenability to suit in this state by extending coverage for Texo for its activities in Alabama.  Moreover, in light of the fact that LFK already has provided a defense to Texo in the underlying action filed in an Alabama court pursuant to the insurance contract, the additional burden of requiring LFK to come

to Alabama to litigate claims arising out of LFK's contractual obligations under the policy seems reasonable and minimal.

In its reply brief, LFK has attempted to differentiate *McGow* on the ground that *McGow* involved an uninsured motorist insurance policy and this action involves a general liability policy.  (Doc. # 62, at 10.)  The emphasis in *McGow* was on a territory-of-coverage clause's inclusion in an "insurer's policy," not on the type of policy.  Agreeing with the rationale of four sister circuits that had examined the effect of an insurance policy's territory-of-coverage clauses on the personal jurisdiction analysis, the *McGow* court did not distinguish the Eighth Circuit decision, for example, on the ground that it involved a commercial general liability policy.  *See McGow*, 412 F.3d at 1214–15 (citing *Ferrell*, 393 F.3d at 791).  Based upon *McGow*, LFK's proffered distinction is not convincing.

As a final matter, LFK relies on *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998), for the proposition that when an insurance company's contact with the forum state is based solely on a territory-of-coverage clause, the contact is "qualitatively low on the due process scale," if the contact counts at all.  *Id.* at 1095; (Doc. # 62, at 13.)  LFK's argument ignores *McGow*'s unfavorable critique of the *OMI Holdings* decision.  *McGow* disagreed with the Tenth Circuit's "hesitance to extend personal jurisdiction to an insurer based purely on the

19

territory-of-coverage clause" and constructively criticizes *OMI Holdings*' reasoning. *See McGow*, 412 F.3d at 1216 n.5 (citing *OMI Holdings*, 149 F.3d at 1093–95). LFK's reliance on *OMI Holdings*, therefore, is unpersuasive.

In sum, LFK relies only on one of the five *Sloss Industries* factors and ignores the remaining factors.  The court will not formulate arguments for LFK that it has declined to make, and new arguments and a shift in strategy presented for the first time in a reply brief come too late.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it."). LFK further fails to distinguish *McGow* in a meaningful way, and *McGow* has rejected the reasoning of the Tenth Circuit decision upon which LFK relies.  On this record, LFK has not established a "compelling case" that the court's exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 477.

**B.    Forum Selection Clause**

In the Eleventh Circuit, a forum selection clause is "presumptively valid where the underlying transaction is fundamentally international in character." *Lipcon*, 148 F.3d at 1295.  Only a "clear showing that the clause[ ] [is] unreasonable under the circumstances" will overcome this presumption of validity. *Id.* (citations and internal

quotation marks omitted).   A forum selection clause is unreasonable where "the chosen law would deprive the plaintiff of a remedy," *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009), or where "'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'" *Estate of Myhra*, 2012 WL 4207303, at *4 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).   The party resisting enforcement of a forum selection clause bears the burden of "clearly show[ing] that enforcement would be unreasonable and unjust . . . ." *The Bremen*, 407 U.S. at 15.

The forum selection clause, which includes a choice-of-law provision, provides:  "Disputes regarding the interpretation or application of this insurance policy of issues related to contractual relationship shall be determined according to Swedish law in Swedish courts."   (Ex. B to Doc. # 45.)   Plaintiff argues that enforcement of the forum selection clause would limit LFK's liability in a manner (1) that would deprive Plaintiff of a remedy for his claims in this action, given the unique remedial scheme under the Alabama Wrongful Death Act, and (2) that would violate Alabama's public policy against enforcing insurance contracts that exclude

the recovery of punitive damages in actions implicating the Alabama Wrongful Death Act. (Doc. # 59, at 17.) For the reasons to follow, the court agrees.[9]

The Alabama Wrongful Death Act "'allow[s] the recovery of punitive damages only.'" *Hill v. Campbell*, 804 So. 2d 1107, 1109 (Ala. Civ. App. 2001) (quoting *Campbell v. Williams*, 638 So. 2d 804 (Ala. 1994)). For that reason, the *Hill* court recognized that "[a] standard liability policy that excluded coverage for punitive damages in a wrongful-death case would contravene Alabama law." *Id.*; *see also* Alabama Attorney General Opinion 2 (Feb. 1, 1978) ("[A]ny administrative ruling which allowed insurance companies to exclude coverage for punitive damages under standard liability policies would be in direct contravention of wrongful death case law on the subject, and would therefore be void as against public policy of [the State of Alabama] as well."). Based upon this authority, Alabama has a strong public policy interest in preventing insurance companies from enforcing a policy's punitive damages exclusion for claims brought under the Alabama Wrongful Death Act.

Here, in the underlying action, Plaintiff (wearing his first litigation hat) recovered a judgment against Texo for $5.25 million in punitive damages under the Alabama Wrongful Death Act. The Act's classification of damages as punitive

---

[9] Because these issues are dispositive, it is unnecessary to address Plaintiffs' other arguments for invalidating the forum selection clause.

appears to be the sole reason why LFK declined settlement, proceeded to trial, and refused to indemnify its insured, Texo, for any portion of the underlying judgment. To enforce the forum selection clause would permit a Swedish court to apply Swedish law to decide whether LFK, which has provided coverage to its insured for activities occurring in Alabama, can rely on a punitive damages exclusion to avoid indemnity coverage for a punitive damages judgment entered against its insured under the Alabama Wrongful Death Act.

Enforcement of the foreign forum selection clause will result in a Swedish court deciding this case based upon application of Swedish law (by operation of the choice-of-law provision), not based upon application of Alabama law. This choice-of-law provision distinguishes this case from *Rucker v. Oasis Legal Finance L.L.C.*, upon which LFK relies. *See* 632 F.3d 1231, 1237 (11th Cir. 2011). In *Rucker*, it is true that forum selection clause was enforced; however, the Eleventh Circuit deemed it significant that the contractually chosen forum "would apply Alabama law" and, thus, "would give proper deference to . . . Alabama precedent." *Id.*; *see also id.* at 1234 (Choice of law provision provided that the purchase agreement would be governed by the Alabama law). No indication has been given that Alabama's law or policies will play any role in the decision in the Swedish courts. Indeed, not even Professor Michael Bogan ventures to comment on this topic. (*See, e.g.,* Prof.

Bogan's Legal Op. 2 ("This opinion . . . does not address . . . whether [under Swedish law] the insurance policy's exclusion of punitive damages shall be interpreted to include the present claim for punitive damages." (Doc. # 59)).)  On this record, Plaintiff has made the required showing that enforcement of the forum selection clause would deprive Plaintiff of a remedy and would contravene Alabama's strong public policy interest against enforcing insurance contracts that exclude the recovery of punitive damages in actions implicating the Alabama Wrongful Death Act.

## V.  CONCLUSION

For the foregoing reasons, the court previously denied Defendant LF Kronoberg's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction and Rule 12(b)(3) motion to dismiss for improper venue.  This court properly exercises personal jurisdiction over LFK, and the forum selection clause is not enforceable.

DONE this 23rd day of October, 2012.

　　　　　　　　　／s／ W. Keith Watkins
　　　　　　　　CHIEF UNITED STATES DISTRICT JUDGE