IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WALTER WINGARD, | ) | |
| administrator of the estate of | ) | |
| Beverlyn Wingard (deceased), as | ) | |
| assignee of Texo AB and | ) | |
| Texo, Inc.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | CASE No. 2:11-CV-45-WKW |
| | ) | [WO] |
| v. | ) | |
| | ) | |
| LÄNSFÖRSÄKRINGAR AB, | ) | |
| LÄNSFÖRSÄKRINGAR ALLIANCE | ) | |
| AB, and LF KRONOBERG, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This diversity action involves a coverage dispute arising out of an international

insurance contract. The dispute began when LF Kronoberg, an independent mutual

insurance company domiciled in Sweden, invoked the punitive damages exclusion

in the insurance contract to deny indemnity to its insureds, Texo, Inc., and Texo AB,

for any part of a $5.25 million punitive damages judgment entered in an Alabama

---

[1] Plaintiff has captioned his pleadings as Walter Wingard, as the administrator of the estate of Beverlyn Wingard, deceased. However, in the body of the complaint's three iterations, it is clear that Plaintiff is bringing this action in his representative capacity as administrator of the estate of Beverlyn Wingard and as the assignee of Texo, Inc., and Texo AB's causes of action under the insurance contract at issue. Because "the complaint itself, not the caption, controls the identification of the parties," *Welch v. Laney*, 57 F.3d 1004, 1010 (11th Cir. 1995), the court has amended the caption.

state court under the Alabama Wrongful Death Act in favor of Plaintiff Walter Wingard as administrator of Beverlyn Wingard's estate. The insureds assigned their causes of action, under the insurance contract for payment of the judgment, to Plaintiff, who then brought this lawsuit against LF Kronoberg and other related Swedish entities alleging, among other claims, breach of the insurance contract.

Before the court is Plaintiff's motion for partial summary judgment on the breach-of-contract claim. (Doc. # 71.) Plaintiff contends that under Alabama's laws and public policy, an insurer cannot exclude coverage for punitive damages in cases brought under the Alabama Wrongful Death Act, an Act that restricts recovery solely to punitive damages. Consequently, Plaintiff contends that under Alabama law, the punitive damages exclusion is void as against public policy, that LF Kronoberg must provide indemnity for the Alabama judgment, and that its failure to do so constitutes a breach of the insurance contract.

LF Kronoberg opposes the summary judgment motion on two grounds. (Doc. # 84.) First, LF Kronoberg argues that neither this court nor the forum's laws have any place in this litigation because the insurance policy's forum-selection and choice-of-law clauses dictate the application of Swedish law in Swedish courts. This argument, in effect, seeks reconsideration of the court's prior Order (Doc. # 68) denying LF Kronoberg's motion to dismiss for improper venue based upon the forum-

2

selection clause.  Given the focus of LF Kronoberg's arguments, the court construes LF Kronoberg's summary judgment response as containing a motion for reconsideration of the prior Order.  Second, assuming the unenforceability of the forum-selection and choice-of-law clauses, LF Kronoberg argues that there was not a proper assignment between Texo and Plaintiff of Texo's contractual rights under the policy, and, thus, Plaintiff cannot bring a cause of action against LF Kronoberg for breach of the insurance contract.

Based upon careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion for reconsideration is due to be granted.  Upon reconsideration, however, the court rejects LF Kronoberg's additional arguments and finds that both the forum-selection clause and the choice-of-law clauses are unenforceable.  The court further finds that Plaintiff's motion for partial summary judgment on the breach-of-contract claims is due to be granted.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).  Plaintiff, as a *bona fide* assignee, is a citizen of Alabama, and Defendants are incorporated under the laws of and headquartered in Sweden.  The amount in controversy exceeds $75,000.  The court has personal jurisdiction over

Defendants, and venue is proper in this district as laid out in the court's prior memorandum opinion (Doc. # 68).

## II.  BACKGROUND

The material facts out of which this litigation arises are not in dispute.  To aid in a better understanding of the underpinnings of this lawsuit, the court initially will provide some background as to the nature of the insurance policy, the underlying state court action, the coverage dispute, and the assignment, followed by a summary of the proceedings in this lawsuit.

## A.    The Insurance Policy

This lawsuit involves a coverage dispute under a general liability policy entered into between two companies domiciled in Sweden:  LF Kronoberg and Texo AB.  LF Kronoberg is the insurer.  Texo AB is the named insured, and Texo, Inc., a domestic corporation, is an additional insured under the policy.[2]  The policy insures Texo's risks arising from its activities in the United States pursuant to a worldwide territory-of-coverage clause, and the pivotal term of the policy at issue is the exclusion for coverage for a punitive damages award.

---

[2] The court refers to Texo AB and Texo, Inc., collectively as "Texo" or the "Texo entities," and to the general liability policy as either the "policy" or the "insurance contract."

Plaintiff Wingard is not a party to the insurance contract. His involvement in this lawsuit is through an assignment from Texo of its rights and causes of action under the insurance contract for payment of indemnity on a judgment for punitive damages entered against Texo in an Alabama state court under the Alabama Wrongful Death Act. Pursuant to that assignment, Plaintiff stands in the shoes of Texo. There is more on the assignment later, but first some discussion of the circumstances of the underlying action is helpful.

## B.   The Underlying Action Filed in State Court Under the Alabama Wrongful Death Act

The coverage dispute began when Texo found itself on the receiving end of a lawsuit filed in an Alabama state court for the wrongful death of Beverlyn Wingard. Ms. Wingard, an Alabama resident, died in an industrial accident while at work in Montgomery, Alabama. She was operating a machine called a warper. Unfortunately, the warper did not have proper safety guards, and tragically, as a result, Ms. Wingard was crushed to death when her body was pulled into the unguarded rotating parts of the machine.

Plaintiff, the assignee in this litigation, also is Ms. Wingard's brother and the administrator of Ms. Wingard's estate. In his capacity as the administrator of Ms. Wingard's estate, Plaintiff sued Texo AB and Texo, Inc., which had repaired and

altered the warper.  He brought suit in the Circuit Court of Montgomery County, Alabama, under the Alabama Wrongful Death Act.  Plaintiff won a $5.25 million judgment, all in punitive damages, as punitive damages are the only permissible damages under the Alabama Wrongful Death Act.  *See* Ala. Code § 6-5-410 (creating private right of action for wrongful death); *Trott v. Brinks, Inc.*, 972 So. 2d 81, 84 (Ala. 2007) (holding that, in a wrongful-death action, "the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions").  "Alabama has historically treated actions resulting in death differently from actions causing lesser injury.  The 'enormity of the wrong' justifies the difference in treatment." *Campbell v. Williams*, 638 So. 2d 804, 810 (Ala. 1994).  To precisely set the line of scrimmage in this contest, it is a violation of Alabama's public policy to exclude punitive damages in an insurance policy covering wrongful deaths occurring in Alabama.

## C.   The Coverage Dispute and the Assignment

LF Kronoberg provided a defense to Texo in the underlying state-court litigation but denied Texo's indemnity claim for payment up to the policy limits of the $5.25 million judgment based upon the policy's punitive damages exclusion. Texo assigned to Plaintiff its contractual rights under the policy for payment of the judgment.  Although the assignment appears to have been oral (as Plaintiff has not

submitted a written contract for the assignment or argued that one exists), counsel for Texo and counsel for Plaintiff in this lawsuit memorialized the existence of the assignment in a written stipulation.  The stipulation provides that "Texo AB and Texo, Inc. assigned to Plaintiff, Walter Wingard, the insurance policy with LF Kronoberg.  The assignment arose out of a judgment entered against Texo AB and Texo, Inc. [in the underlying state-court action]."[3]  (Doc. # 86-4 (Stipulation).)

The first sentence of the stipulation suggests an assignment of the policy itself, while the second sentence implies an assignment of any rights Texo may have under the policy for indemnity of the judgment.  *See generally* 17 *Williston on Contracts* § 49:126 (4th ed.) (distinguishing in the context of casualty insurance policies between assignments of a policy itself before a loss has occurred (which is an assignment of the contractual relationship) and the assignment of the policyholder's rights under the policy after a loss has occurred and regarding that loss (which is an assignment of the policyholder's causes of action)).  Notwithstanding the wording of the stipulation, the context of this lawsuit – including the pleadings, the briefing on motions, and the contentions in the proposed pretrial order – elucidates that the

---

[3] Counsel for Texo and counsel for Plaintiff prepared the stipulation pursuant to counsel for LF Kronoberg's request for a "stipulation as to the terms of the agreement relating to allowing Plaintiff to assert claims against LF Kronoberg . . . ."  (Doc. # 80 (Supplemental Report of Parties' Planning Meeting).)  LF Kronoberg represented that if Texo and Plaintiff submitted the stipulation, then LF Kronoberg would "accept it as establishing the terms of the agreement without further discovery on that issue."  (Doc. # 80.)

assignment pertains to the latter. (*See, e.g.*, 2d Am. Compl. ¶ 5 ("Texo, Inc. and Texo AB have assigned their right of action against Defendants to Walter Wingard in accordance with § 8-5-20, Code of Alabama, 1975.").) Because both parties assume that the assignment pertains to an assignment of Texo's rights under the policy (in particular, Texo's rights to causes of action against LF Kronoberg), the court will do the same.

## D.   This Lawsuit

Plaintiff brings the instant action as Texo's assignee.[4] Defendants, all of which are deemed citizens of Sweden, are LF Kronoberg, Länsförsäkringar AB, and Länsförsäkringar Alliance. Länsförsäkringar AB is in default (*see* Doc. # 65), and Plaintiff has not perfected service on Länsförsäkringar Alliance. Only LF Kronoberg has defended this action.

Plaintiff alleges claims for breach of the insurance contract and negligent failure to settle and also seeks to enjoin related litigation in Sweden. LF Kronoberg promptly moved to dismiss for lack of personal jurisdiction and for improper venue, but the court denied that motion in a prior Order. (Doc. # 68.) The court concluded

---

[4] In these related proceedings, Plaintiff has worn two litigation hats. The first hat is that of the administrator of the estate of Ms. Wingard, his sister. Wearing that hat, Plaintiff instituted the underlying action in state court. In this litigation, Plaintiff wears a second hat – the hat of the assignee of Texo's rights under the LF Kronoberg policy. This action pertains solely to Plaintiff's second hat.

that LF Kronoberg had sufficient contacts to support the exercise of specific jurisdiction and that doing so would not violate traditional notions of fair play and substantial justice. The court also found that the policy's forum-selection clause was unenforceable and, thus, rejected LF Kronoberg's argument that venue was improper in the United States District Court for the Middle District of Alabama.

Plaintiff now moves for partial summary judgment on the breach-of-contract claim, arguing that "there is no genuine issue of material fact as to whether LFK's insurance policy covers the judgment entered against [Texo]." (Doc. # 72, at 1.) Plaintiff contends, and LF Kronoberg has not disputed, that LF Kronoberg refused to pay the judgment against Texo based solely on the punitive damages exclusion in the policy, but Plaintiff argues that, "[u]nder Alabama law and public policy, an insurance policy cannot exclude coverage for punitive damages in a wrongful death case." (Doc. # 72, at 5.) Because the policy's punitive damages exclusion at issue is void under Alabama law, Plaintiff contends that the insurance policy "unequivocally provided coverage against Ms. Wingard's injuries" and that LF Kronoberg breached the insurance contract when it failed to pay the underlying judgment. (Doc. # 72, at 6.)

Responding to the motion for partial summary judgment, LF Kronoberg continues to insist that, based upon the forum-selection and choice-of-law clauses,

the parties must litigate this case in the courts of Sweden in accordance with the laws of Sweden. And it contends that under Swedish law, a Swedish court would uphold the punitive damages exclusion in the policy to deny indemnity coverage for the underlying Alabama judgment. (*See* Doc. # 85, in which LF Kronoberg asserts that "[i]n Sweden, a party to a civil action cannot receive an award of punitive damages for any injury or cause of action"). Alternatively, LF Kronoberg contends that the assignment of Texo's claims to Plaintiff is improper based on the absence of an endorsement to assert a claim for breach of contract. LF Kronoberg contends, therefore, that Plaintiff is not a proper party to bring a breach-of-contract action against LF Kronoberg and that Plaintiff's partial summary judgment motion is due to be denied. LF Kronoberg did not file a summary judgment motion on this or any other issue.

## III.  STANDARDS OF REVIEW

### A.  <u>Reconsideration</u>

The court has broad discretion to reconsider an interlocutory order. *See Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000); *see also United States v. Acosta*, 669 F.2d 292, 293 (5th Cir. Unit B 1982)[5] ("[T]he district court has

---

[5] Decisions of Unit B of the former Fifth Circuit are binding precedent in this circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

broad power to reconsider the correctness of its interlocutory rulings.").  It may reconsider an interlocutory ruling "for any reason it deems sufficient."  *Canaday v. Household Retail Servs., Inc.*, 119 F. Supp. 2d 1258, 1260 (M.D. Ala. 2000), *aff'd sub nom. Perry v. Household Retail*, 268 F.3d 1067 (11th Cir. 2001).

## B.    <u>Summary Judgment</u>

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact.  *Id.*  A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to

establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists.  *Id.* at 324.

## IV.  DISCUSSION

The court divides its discussion into two parts.  Part A reconsiders the ruling that the forum-selection clause is unenforceable.  Part B addresses Plaintiff's motion for partial summary judgment on the breach-of-contract claim, which incorporates discussion on the validity of the assignment.

**A.**   **Reconsideration of the Court's Order Denying LF Kronoberg's Motion to Dismiss for Improper Venue**

LF Kronoberg moves for reconsideration of the court's prior Order (Doc. # 68) denying its motion to dismiss for improper venue on grounds that the policy's forum-selection clause is unenforceable.   Upon reconsideration, the court reaffirms that Order that the forum-selection clause is unenforceable.  The court also expressly finds what it previously implicitly found – that the choice-of-law clause also is unenforceable.

The broad issue is whether the forum-selection and choice-of-law clauses mandating the courts of Sweden and application of Swedish law for resolution of any dispute arising out of the insurance contract are enforceable.  At the motion-to-dismiss stage, Plaintiff did not directly challenge the choice-of-law provision as

requiring denial of LF Kronoberg's motion, and this court did not directly invalidate that clause. But LF Kronoberg's assumption that the court found both the forum-selection choice-of-law clauses unenforceable is reasonable. (*See* Doc. # 84, at 5, in which LF Kronoberg argues that "[t]his Court has ruled that the choice clauses in the insurance contract are unenforceable.") Namely, applying *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the court implied that, as represented in the briefing, a Swedish court applying Swedish law likely would honor the policy's punitive damages exclusion and permit LF Kronoberg to rely on it to deny indemnity coverage for the Alabama judgment for punitive damages under the Alabama Wrongful Death Act. (Doc. # 68, at 22– 24.) In essence, the court found that operating together, the choice clauses denied Plaintiff a remedy (because punitive damages constitute the only remedy under the Alabama Wrongful Death Act) and violated Alabama's strong public policy prohibiting the exclusion of coverage for punitive damages in a case under the Alabama Wrongful Death Act. Admittedly, the court's finding impliedly found the choice-of-law clause unenforceable.[6]

---

[6] The finding that the forum-selection clause is unenforceable may well have been different had the choice-of-law clause, for example, dictated application of Alabama law. In that hypothetical, Plaintiff would have had greater difficulty arguing that the forum-selection clause would deprive Plaintiff of a remedy and violate Alabama's public policy because a Swedish court would have been bound to apply Alabama law.

LF Kronoberg contends that the court got it wrong. It says that both choice clauses – the forum selection clause and the choice of law clause – are enforceable based upon the four-factored framework originating in *Bremen*. And Plaintiff argues that the court correctly applied *Bremen*. The court agrees with Plaintiff and takes this opportunity on reconsideration not only to reexamine its prior findings (both explicit and implicit), but also to address a conflict-of-laws issue not addressed by either party.

### 1.    Conflict of Laws

As a preliminary matter, the court turns to a matter that the parties have side-stepped. That matter is *Erie*. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The *Erie* question boils down to whether the forum-selection clause and the choice-of-law clause are governed by the same law. The court addresses, first, the law governing forum-selection clauses and, second, the law governing choice-of-law clauses.

### a.    The Law Governing Forum-Selection Clauses

There is not a clear consensus among the circuits as to whether forum-selection clauses are substantive or procedural for purposes of *Erie*. *See Albemarle Corp. v.*

*AstraZeneca UK Ltd.*, 628 F.3d 643, 648–50 (4th Cir. 2010) (collecting cases); *Lambert v. Cesar*, 983 F.2d 1110 (1st Cir. 1993) (collecting cases). Thankfully under Eleventh Circuit precedent, this court need not enter the murky *Erie* waters when it comes to deciding whether federal or state law governs the enforcement of the forum-selection clause.

In *Rucker v. Oasis Legal Finances, LLC*, 632 F.3d 1231 (11th Cir. 2011), also a diversity action, the Eleventh Circuit pronounced, "We decide whether state versus federal law governs a particular issue, such as the enforceability of a forum selection clause, in federal diversity cases by applying the *Erie* doctrine." *Id.* at 1235; *see also Kostelac v. Allianz Global Corporate & Specialty AG*, 517 F. App'x 670, 673 (11th Cir. 2013) (In a diversity case, the court must "look to the *Erie* doctrine to determine whether state or federal law governs the enforcement of the forum-selection clause."). But "[i]f no conflict exists [between federal and state law with respect to the validity of forum-selection clauses], then the analysis need proceed no further, for the court can apply state and federal law harmoniously to the issue." *Rucker*, 632 F.3d at 1235 (citation and internal quotation marks omitted). Fortunately, "there is no conflict between Alabama and federal law regarding the validity of forum selection clauses." *Id.* at 1236. *Rucker* and *Kostelac* applied *Bremen* to decide the validity of the forum-selection clause, and this court did the same in its earlier Order. The analysis of the

15

forum-selection clause on reconsideration, therefore, will remain informed by *Bremen*.

In *Bremen*, the Supreme Court of the United States altered the American courts' course in admiralty cases involving international agreements from a presumptive disapproval of forum-selection clauses to a presumptive approval of such clauses.   In *Bremen*, a Texas corporation contracted with a German corporation to tow an offshore drilling rig from Louisiana to the Adriatic Sea near Ravenna, Italy. *See id.* at 1.   During the rig's tow, and many nautical miles from the final destination, a storm arose in the Gulf of Mexico that caused substantial damage to the offshore rig.   The damage caused by the storm disrupted the rig's voyage and required an emergency stop in Tampa, Florida, the closest port of refuge.   The Texas corporation brought suit in admiralty in a federal district court in Tampa against the German corporation for breach of contract and negligence, notwithstanding the towing contract's forum-selection clause mandating that the parties litigate contractual disputes in the English courts. *See id.* at 3.

The German corporation moved to dismiss the action, invoking the forum-selection clause. *See id.* at 4.   The district court and the court of appeals found the clauses unenforceable, relying on the then-traditional view of the American courts that "agreements in advance of controversy whose object is to oust the jurisdiction

of the courts are contrary to public policy and will not be enforced." *Id.* at 6 (citation and internal quotation marks omitted).

But the Supreme Court disagreed with the lower courts' charted course: "[I]n light of present-day commercial realties and expanding international trade[,] we conclude that the forum clause should control absent a strong showing that it should be set aside." *Id.* at 15. The Supreme Court held that for federal district courts sitting in admiralty, forum-selection clauses are "*prima facie* valid." *Id.* at 10. To demonstrate a clause's invalidity, the clause's opponent must "show that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Id.* at 15. The Court also observed that a contractual forum-selection clause is unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id. Bremen* thus marked a clear, navigable *Erie* course when it comes to what law governs the enforceability of a forum-selection clause in an admiralty case involving an international contract.

### b.    The Law Governing Contractual Choice-of-Law Clauses

*Bremen* did not involve a dispute about the enforceability of a contractual choice-of-law clause, nor was subject matter jurisdiction based on diversity. Following *Bremen*'s sea change, however, the Eleventh Circuit has extended

*Bremen*'s rationale to non-admiralty cases (including diversity cases) involving both forum-selection and choice-of-law clauses, at least in cases involving international agreements. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998), is one such case.

In *Lipcon*, an action brought under federal securities laws, the Eleventh Circuit employed a dual analysis of "choice clauses" in an international agreement that required resolution of disputes under English law in English courts. *Lipcon* described *Bremen* as establishing a "framework for evaluating choice provisions in international agreements." *Id.* at 1291. *Lipcon* recognized that the international contract at issue in *Bremen* did not contain a choice-of-law clause, but it observed that *Bremen* had noted the clear interplay between the two: "'[I]t is the general rule in English courts that the parties are assumed, absent contrary indications, to have designated the forum with the view that it should apply its own law . . . . It is therefore reasonable to conclude that the forum choice clause was also an effort to obtain certainty as to the applicable substantive law.'" *Id.* at 1292 (quoting *Bremen*, 401 U.S. at 15 n.15). Because the choice clauses in *Lipcon* were part of an agreement that was "truly international," *id.* at 1293 n.14, *Lipcon* reviewed the international choice clauses pursuant to "the *Bremen* test." *Id.* at 1292, 1295–96; *see also id.* at 1295 ("[F]orum-

selection and choice of law clauses 'are presumptively valid where the underlying transaction is fundamentally international.'").

Although *Lipcon* enforced the choice clauses before it, the Eleventh Circuit recognized that there are exceptions to their enforceability. It held that "choice clauses" are not enforceable under *Bremen*'s teachings if "(1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy."[7] *Id.* at 1296. *Lipcon* set a buoy for application of *Bremen* to "choice clauses" in international contracts, but jurisdiction was anchored to the presence of a federal question.

Recently, however, in a diversity case involving "an international dispute between foreign entities" of the Bahamas and the Cayman Islands, the Eleventh Circuit held that *Lipcon* provided the framework for the analysis. *Xena Invs., Ltd. v. Magnum Fund Mgmt. Ltd.*, ___ F.3d ___, 2013 WL 4081393, at *5 (11th Cir. 2013). In *Xena*, the Eleventh Circuit held that the district court correctly enforced the "forum-selection clause . . . requiring all disputes be resolved *under English law* in

---

[7] The court refers to these exceptions and the "*Bremen/Lipcon* factors."

English courts." *Id.* (emphasis added).  The *Xena* court cited approvingly the district court's reliance on *Lipcon* for the principle that under *Bremen*, both forum-selection clauses and choice-of-law clauses in international agreements are enforceable unless one of the four *Bremen/Lipcon* factors applies.  *See id.* (citing *Lipcon*, 148 F.3d at 1296); *see also Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1235–36 & n.1, 1240 (11th Cir. 2012) (analyzing under *Bremen* the enforceability of a forum-selection clause requiring litigation in the courts of England and Wales and encompassing a choice-of-law clause dictating application of English law where federal jurisdiction was based both on diversity of citizenship and the presence of a federal question).

The court finds that application of the *Bremen* test as framed by *Lipcon* to determine the validity of the choice clauses is appropriate in this case as well for at least three reasons.  First, the court finds and the parties do not dispute that "the underlying transaction is fundamentally international in character." *Lipcon*, 148 F.3d at 1295.  The insurance policy was executed between two Swedish corporations (LF Kronoberg and Texo AB) to insure both a Swedish corporation (Texo AB) and a United States corporation (Texo, Inc.).  The policy insured Texo AB and Texo, Inc.'s activities occurring anywhere in the world (pursuant to a worldwide territory-of-coverage).  That coverage necessarily extended to Alabama, and it was Texo AB's

and Texo, Inc.'s activities in Alabama that caused an Alabama citizen's tragic death. The international character of the agreement aligns this case with the facts in *Bremen*, *Lipcon*, and *Xena*.

Second, *Lipcon* firmly embeds consideration of a choice-of-law clause (the "chosen law") into the *Bremen* analysis of whether the forum-selection clause is enforceable.  Namely, when a court considers whether "the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy," *Lipcon*, 148 F.3d at 1296, the parties' choice clauses become inextricably intertwined.  And when the parties' chosen law, in fact, strips the plaintiff of any remedy whatsoever, the two choice clauses necessarily must sink together.  *Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) ("[I]n the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.").

Third, both Plaintiff and LF Kronoberg propose *Bremen/Lipcon* as providing the applicable legal standard for both choice clauses, albeit with disagreement as to the result obtained.  Significantly, the parties have not argued that the choice-of-law clause requires application of Alabama's conflict of laws or that, in any event, Alabama's conflict of laws would yield a contrary result.  But those potential

21

arguments are *Erie* water under the bridge:  The parties have waived any argument that Alabama's conflict of laws governs the analysis of the contractual choice-of-law clause for failure to raise that issue at any time during these proceedings.  *Cf. Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 n.15 (11th Cir. 1985) (appellant waived choice-of-law issue when it had acquiesced in the trial court's choice-of-law decisions throughout the trial court proceedings and objected for the first time on appeal).

*Bremen* and *Lipcon* will guide, therefore, the analysis of whether the choice clauses are enforceable.  But assuming that the parties had not waived reliance on Alabama's conflict-of-laws analysis as to the contractual choice-of-law clause, the court will apply Alabama's conflict of laws to the contractual choice-of law clause. For the reasons to follow, the result is the same under either analysis – the choice clauses are unenforceable.

### 2.    *Application of Bremen and Lipcon*

During the course of this litigation, Plaintiff has challenged the validity of the choice clauses under the second, third, and fourth *Bremen*/*Lipcon* factors.  (Doc. # 69, at 16–18; Doc. # 86, at 6–7.)  For the reasons that follow, the court finds that the forum-selection and the choice-of-law clauses are unenforceable based upon the *Bremen*/*Lipcon*'s third and fourth factors, but not the second factor.

22

The second factor requires a showing that "the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum" *Lipcon*, 148 F.3d at 1296. Plaintiff argues that requiring him to litigate his claim against LF Kronoberg in Sweden would deprive him of his day in court because he "cannot afford to litigate his claim in a foreign country." (Doc. # 59, at 17; *see also* Doc. # 86, at 5 n.1.) That argument is misplaced. The second *Lipcon* factor focuses on the convenience and fairness of the forum to Texo, not to Plaintiff. Plaintiff as the assignee of Texo's rights cannot "shift the *Bremen* inquiry to [himself] in relation to the insurance contract." *Kostelac*, 517 F. App'x at 676. For that reason, the *Kostelac* court rejected a similar argument made by the assignees to an insurance contract: "Whatever burden the assignees might bear in bringing the case in Germany is immaterial to our analysis of their position as [the contracting party's] assignees." *Id*. In *Kostelac*, the assignees failed to demonstrate that the original contracting party faced any "unforeseeable burdens" by litigating in Germany. *See id.* Similarly, Plaintiff has not pointed to any unforeseeable burdens that would render it inconvenient or unfair for Texo to litigate in Sweden; thus, the second factor does not adversely affect the choice clauses' enforceability.

The third *Bremen*/*Lipcon* factor analyzes whether "the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy." *Lipcon*, 148 F.3d at 1292.

The Eleventh Circuit "will not invalidate choice clauses . . . simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States." *Id.* at 1297. "Instead, [the Eleventh Circuit] will declare unenforceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair." *Id.* In *Lipcon*, for example, the court held that choice clauses were enforceable because, even though English law was "less favorable" to the American plaintiffs than U.S. securities laws, English law provided "adequate remedies" that permitted "polic[ies] underlying United States securities law [to] be vindicated." *Id.* at 1297–99.

The parties submit that a Swedish court applying Swedish law would likely honor the policy's punitive damages exclusion in the insurance policy. (*See, e.g.*, LF Kronoberg's Notice of Foreign Law ¶ 9 (Doc. # 85) ("In Sweden, a party to a civil action cannot receive an award of punitive damages for any injury or cause of action," and, thus, "contracts with provisions disallowing for coverage of punitive damages are upheld in Sweden.").) This being the sole reason LF Kronoberg denied indemnity coverage, as represented by the parties in their briefing, application of Swedish law would permit LF Kronoberg to rely on the policy's punitive damages exclusion to deny coverage for the judgment entered against Texo under the Alabama Wrongful

Death Act.  Under Swedish law then, there can never be a remedy for an insured whose insurance policy contains a punitive damages exclusion when the insured seeks indemnity under the policy for a judgment under the Alabama Wrongful Death Act.  That is because under Alabama's unique wrongful death statute, "the only recoverable damages are punitive damages intended to punish the tortfeasor for its actions." *Trott*, 972 So. 2d at 84; *see also  Hill v. Campbell*, 804 So. 2d 1107, 1115 (Ala. Civ. App. 2001) ("We note that Alabama's Wrongful Death Act is unique in the nation in that it has been interpreted to allow only punitive damages on a wrongful-death claim.").

This is not a case in which the remedies under Swedish law are merely "less favorable" to Plaintiff's chance of recovery than in Alabama, or where Plaintiff must forfeit *some* claims in the chosen forum that he would have had in the absence of the choice-of-law clause.  *See Lipcon*, 148 F.3d at 1297–99.  Rather, this is a case where the remedy under Swedish law is, literally, no remedy at all.  Hence, the forum-selection clause and the choice of law provision effectively work together to "deprive Plaintiff of a remedy."

LF Kronoberg does not dispute that Plaintiff, as Texo's assignee, has no remedy under the insurance contract if Swedish law applies.  But LF Kronoberg nonetheless argues that Plaintiff "is not without a remedy" if the court enforces the

choice clauses because Plaintiff can enforce its $5.25 million judgment against Texo "by having the judgment domesticated in Alabama." (Doc. # 84, at 5.) That may or may not be true.[8] But even assuming the truth of LF Kronoberg's argument, it confuses Plaintiff's role in this litigation. In suing LF Kronoberg, Plaintiff wears his second hat (*see supra* note 4) and stands in the shoes of Texo pursuant to the assignment. To follow Texo's argument to its necessary conclusion, Plaintiff, as assignee of Texo's rights, would in effect be taking legal action for the enforcement of the judgment against itself, and that is nonsensical. The point is that Texo's remedies under the insurance contract are the focus here, not Plaintiff's remedies in relation to the judgment Plaintiff obtained against Texo in the underlying action in his capacity as the administrator of Ms. Wingard's estate. That is why LF Kronoberg's argument is misguided.

Under the fourth *Bremen*/*Lipcon* factor, the court considers whether "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15. Here, Plaintiff focuses on the forum of Alabama, and its judicial decision pronouncing a strong public policy precluding an insurance company whose coverage

---

[8] Plaintiff reminds the court that, wearing his first litigation hat, he agreed with Texo not to execute the judgment against Texo in exchange for an assignment of any rights Texo had under the policy with LF Kronoberg.

territory includes Alabama from excluding coverage for punitive damages in cases

alleging wrongful death under Alabama law.[9]  Because of the oddity of the Alabama

Wrongful Death Act, "[a] standard liability policy that excluded coverage for punitive

damages in a wrongful-death case would contravene Alabama law." *Hill*, 804 So. at

1109; *see also* Alabama Attorney Gen. Op. 2 (Feb. 1, 1978) ("[A]ny administrative

ruling which allowed insurance companies to exclude coverage for punitive damages

under standard liability policies would be in direct contravention of wrongful death

case law on the subject, and would therefore be void as against public policy of [the

State of Alabama] as well.").  The court focused on this same public policy in its prior

---

[9] The Eleventh Circuit and other courts have considered a broad range of public policy arguments in the *Bremen* analysis, and LF Kronoberg provides no authority, and the court found none, that precludes reliance on the forum's state law for the public policy analysis.  *See, e.g., Estate of Myra*, 695 F.3d at 1241 (concluding that the forum-selection clause was "subject to judicial scrutiny to determine whether it violates the public policy embodied in" a federal maritime statute); *Rucker*, 632 F.3d at 1237 (acknowledging the plaintiffs' state public policy argument, but holding that enforcement of the forum-selection clause had no impact on whether the purchase agreements violated Alabama public policy against enforcing contracts based upon illegal gambling consideration because the choice-of-law clause required application of Alabama law); *Seung v. Regent Seven Seas Cruises, Inc.*, 393 F. App'x 647, 649 (11th Cir. 2010) ("[T]o the extent Seung contends that enforcing the clause contravenes United States public policy in favor of reimbursing Medicare for Seung's prior medical expenses, we are unpersuaded, since Seung has not suggested that Paris is not a legally competent forum for her claim"); *Lipcon*, 148 F.3d at 1285 (considering whether the choice clauses' requirements for litigation in England's courts under English law would contravene the public policies expressed in the anti-waiver provisions of the United States' securities laws); *IDACORP, Inc. v. Am. Fiber Sys. Inc.*, No. 11cv654-EJL, 2012 WL 4139925, at *2 (D. Idaho 2012) ("Federal law expressly contemplates considering state policies in determining the enforceability of forum-selection clauses.); *but see Albemarle*, 628 F.3d at 651 (rejecting the argument that the forum-selection clause would violate South Carolina's strong public policy disfavoring such clauses; "it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in *The Bremen*.").

Order.  Based on the foregoing authority, the court found in its prior Order that "Alabama has a strong public policy interest in preventing insurance companies from enforcing a policy's punitive damages exclusion for claims brought under the Alabama Wrongful Death Act."  (Doc. # 68, at 22.)  The court reaffirms that finding here.  The court also incorporates by reference its holding in the next subsection that Alabama has a "fundamental public policy" that prohibits insurance companies from excluding coverage for punitive damages awards under the Alabama Wrongful Death Act.  Although that holding is made under Alabama's conflict-of-laws analysis, for purposes of this case, the court discerns no meaningful distinction between a "fundamental public policy" and a "strong public policy" as used in *Bremen*.[10]

In sum, the choice clauses work together not only to deprive Plaintiff of a remedy under the insurance contract, but also to violate the strong public policy of the forum state.  Accordingly, the court finds on reconsideration that both the forum-selection clause and the choice-of-law clause are unenforceable.

### 3.     *Application of Alabama's Conflict of Laws*

In the alternative, assuming in a diversity case that *Bremen* and *Lipcon* do not supply the proper test for evaluating a choice-of-law clause in an international

---

[10]  It is unnecessary to decide whether a context exists in which a public policy could be fundamental, but not strong, or *vice versa*.

agreement, the application of Alabama's conflict-of-laws analysis commands the same result.

Alabama courts analyze whether a party's contractual choice-of-law clause is enforceable by reference to the Second Restatement of Conflicts §§ 187-88. *See generally Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506–07 (Ala. 1991) (explaining that Alabama analyzes whether a contractual choice-of-law clause is enforceable by reference to the Second Restatement of Conflict of Laws, §§ 187–88). Under the Restatement Second, the choice-of-law clause is valid and the chosen law applies "if the particular issue is one which the parties could have resolved by explicit provision in their agreement directed to that issue." *Restatement (Second) of Conflict of Laws* § 187(1). Here, the "particular issue" is the punitive damages exclusion as it operates in Alabama's legal climate. This provision of the Restatement does not shed light on whether the parties could have resolved this issue by agreement. Indeed, the peculiarity of the Alabama Wrongful Death Act's allowance of only punitive damages  would surely not have occurred in the cool climate of Sweden. It is difficult to imagine an invitation from LF Kronoberg to Texo during contract negotiations for the two to meet at the finest restaurant in Stockholm to discuss the policy's exclusions in light of the law of damages in Alabama that excludes a punitive damages recovery.

Even if the parties could not have resolved the particular issue by agreement, the chosen law applies unless (a) it "has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or (b) its "application . . . would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen [forum's law] in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Restatement (Second) of Conflict of Laws* § 187(2)(a) & (b). Here, the contracting parties chose Swedish law to govern, and Sweden has a substantial relationship to the parties and the transaction because the parties to the contract are two Swedish companies executing an insurance contract in Sweden. Thus, the law of the chosen jurisdiction – Sweden – applies unless the exception articulated in § 187(2)(b) applies.

Under § 187(2)(b), the law of the jurisdiction with a materially greater interest than the chosen forum trumps the chosen law if the chosen law is contrary to a fundamental public policy of that jurisdiction and that jurisdiction's law would govern in the absence of a choice-of-law provision. Thus, to apply the Restatement, it is essential to determine whose contract law would apply in the absence of the choice-of-law clause, which is the appropriate starting point for the analysis.

### a. Whether Alabama's Law Applies in the Absence of an Effective Choice-of-Law Clause

Under Alabama's rule of *lex loci contractus*, in the absence of a choice-of-law provision, the law of a contract is the law of the jurisdiction where the parties entered the contract. That would be Sweden. There is an exception, however, to this general rule: The law of the jurisdiction where the parties formed the contract applies unless that law "is contrary to the forum state's fundamental public policy." *Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004); *see also Cherokee Ins. Co. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007) (quoting *Stovall*). Therefore, the law of Sweden will apply unless application of its law is contrary to Alabama's fundamental public policy. However, if application of Sweden's law is contrary to Alabama's fundamental public policy, Alabama law will apply in the absence of a choice-of-law clause. *See Cherry*, 582 So. 2d at 506–07.[11]

---

[11] This inquiry loops back on the § 187(2)(b) exception, but is not identical to it. If Sweden's law is contrary to Alabama's fundamental public policy such that *lex loci contractus* does not control, Alabama is the relevant comparator under § 187(2)(b).

### i.    Whether Alabama Has a Fundamental Public Policy Prohibiting Insurance Companies from Excluding Coverage for Punitive Damages Awards Under the Alabama Wrongful Death Act

"[I]n order for a policy to be considered fundamental it must be 'a substantial one' and 'may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.'" *Cherry*, 582 So. 2d at 507.  There are two levels of public policies in Alabama – those fundamental enough to take precedence over that of other jurisdictions, and those recognized by Alabama law but which will not, on their own, take precedence over other jurisdictions' policies.  *Cherokee Insurance Co. v. Sanches* illustrates the differences between an ordinary Alabama public policy and an Alabama fundamental public policy in the context of an uninsured motorist insurance policy.  *See* 975 So. 2d 287, 294 (Ala. 2007) ("[W]e do not discern any legislative intent that the public policies encompassed in our UM [uninsured motorist] statute were intended to take precedence over those of sister states.").

Alabama has a public policy that prohibits insurance companies from excluding coverage for punitive damages awards under the Alabama Wrongful Death Act.  The question is whether this policy is a fundamental one.  The parties have not cited and

this court has not found any binding authority expressly ruling whether Alabama's public policy interest in prohibiting punitive damages exclusions in insurance contracts in an Alabama wrongful death case is a "fundamental public policy" that should void a contractual choice-of-law provision. But the court has little difficulty concluding that existing Alabama law provides "sufficient and significant guidance on how the Alabama Supreme Court would rule if presented with this issue." *First Fin. Bank v. CS Assets, LLC*, 434 F. App'x 897, 898 (11th Cir. 2011).

That law begins with the Act itself. There is only one cause of action in Alabama for death – the Alabama Wrongful Death Act. *See Ala. Power Co. v. White*, 377 So. 2d 930, 933 (Ala. 1979). And there is only one type of damages available for that sole cause of action – punitive damages. *See Atkins v. Lee*, 603 So. 2d 937, 943 (Ala. 1992) (Damages under the Alabama Wrongful Death Act "are entirely punitive, imposed for the preservation of human life and as a deterrent to others to prevent similar wrongs."). "An insurance company can limit coverage through exclusions, so long as those exclusions do not violate a statute or public policy." *Hill*, 804 So. 2d at 1109; *see also Perdue v. Green*, ___ So. 3d ___, 2012 WL 887492, at *8 (Ala. 2012) ("[I]t has long been the law of this State that every contract adverse to the enactments of the legislature, is illegal and void." (citation and internal quotation marks omitted)). "A standard liability policy that excluded coverage for punitive

damages in a wrongful-death case would contravene Alabama law," *Hill*, 804 So. 2d at 1109, and, thus, would violate the public policy of Alabama.  *See* Alabama Attorney Gen. Op. 2 (Feb. 1, 1978) ("[A]ny administrative ruling which allowed insurance companies to exclude coverage for punitive damages under standard liability policies would be in direct contravention of wrongful death case law on the subject, and would therefore be void as against public policy of [the State of Alabama] as well.").

The Alabama Supreme Court liberally has construed an insurance policy in favor of providing coverage for punitive damages under Alabama's unique wrongful death law.  In *American Fidelity & Casualty Co. v Werfel*, 162 So. 103, 106 (Ala. 1935), although not decided on public policy grounds, the Alabama Supreme Court held that where an automobile insurance policy provided coverage for accidental injury and death, the insurer was obligated to pay a punitive damages award entered against its insured in a wrongful death case under a precursor to the Alabama Wrongful Death Act that similarly limited recovery to punitive damages.  *See id.* at 106; *see also Hill*, 804 So. 2d at 1110 (citing *Werfel*).

Against the foregoing legal backdrop, an insurance company that provides coverage for its insured's activities in Alabama that result in the loss of human life based upon the insured's "wrongful act, omission, or negligence," Ala. Code

§ 6-5-410, but denies coverage for punitive damages awards, in effect provides no coverage at all.  An insurance policy, as just described, is in derogation of the Alabama Wrongful Death Act and openly and directly contravenes Alabama's public policy.  While Alabama's public policy against punitive damages exclusions in insurance policies where the insured's liability arises under the Alabama Wrongful Death Act is not itself embodied in a statute, that public policy flows directly from the Act.  And even if not in a holding, the highest court of the state pronounced the public policy, and the state's attorney has confirmed it.  *See Hill*, 804 So. 2d at 1009; *see also* Alabama Attorney Gen. Op. 2 (Feb. 1, 1978).  Because punitive damages are the only remedy the legislature has chosen for civil homicide and because Alabama courts have stressed the need to punish wrongful behavior that results in death, one could hardly imagine a more fundamental public policy than one that forbids an insurer's reliance on a punitive damages exclusion when the Alabama Wrongful Death Act is implicated.  Based on the foregoing authority, there is a sufficient and substantial basis in Alabama law to conclude that Alabama's public policy that prohibits insurance companies from excluding coverage for punitive damages awards under the Alabama Wrongful Death Act is a substantial policy and a fundamental one.

### ii.      Whether Application of Swedish Law Would Be Contrary to Alabama's Fundamental Public Policy

The parties agree that Swedish law does not share Alabama's same fundamental public policy against insurance policy exclusions for punitive damages awarded under the Alabama Wrongful Death Act.  A Swedish court applying Swedish law, according to the parties' submissions, would uphold the punitive damages exclusion, even where the insurance policy provided coverage for the insured's activities in Alabama and the insured was found liable under the Alabama Wrongful Death Act, an Act under which only punitive damages are available.   Accordingly, Swedish law on punitive damages exclusions is contrary to Alabama's fundamental public policy.

### iii.     Summary

The preceding analysis resolves the issue of which state's law would apply in the absence of an effective contractual choice-of-law clause.  The law of Alabama would apply because Swedish law is contrary to the forum state's fundamental public policy.

### b.     Whether Alabama Has a Materially Greater Interest than Sweden in the Outcome of this Case

Section 187(2)(b) also asks whether application of the chosen law (Swedish law) would be contrary to a fundamental policy of a jurisdiction that has a materially greater interest than the chosen forum (Sweden) in the determination of the particular issue.  Because the court has found that Sweden's law is contrary to Alabama's fundamental public policy such that *lex loci contractus* does not control, Alabama is the relevant comparator in the analysis, and the only issue left for determination under § 187(2)(b) is whether Alabama has a materially greater interest than Sweden in the outcome of this case.

Although the original contracting parties are Swedish entities, the insurance policy extended coverage to its insureds for their activities in Alabama.  LF Kronoberg now is attempting to enforce a punitive damages exclusion to preclude its Swedish insured (Texo AB) and its domestic insured (Texo, Inc.) from coverage for those activities in Alabama.  Moreover, those activities caused the death of an Alabama resident in an Alabama factory, and the Texo entities' liability arises from a judgment under the Alabama Wrongful Death Act entered by an Alabama court. Alabama has a strong interest in litigation involving a foreign entity's activities that affect its residents and factories and in preventing a foreign insurance policy's

subversion of the unique remedial scheme under the Alabama Wrongful Death Act. For these reasons, Alabama has a materially greater interest than Sweden in deciding this case.

## B.     Plaintiff's Motion for Partial Summary Judgment on the Breach-of-Contract Claim

With the choice clauses unenforceable and Alabama decidedly supplying the governing substantive law, resolution of Plaintiff's motion for partial summary judgment is markedly simplified.  Plaintiff contends that under Alabama law an insurance policy's exclusion for coverage of a punitive damages award under the Alabama Wrongful Death Act is void against public policy.  As discussed elsewhere in this opinion, Plaintiff is correct.  "A standard liability policy that exclude[s] coverage for punitive damages in a wrongful-death case . . . contravene[s] Alabama law." *Hill*, 804 So. 2d at 1109; *see also Perdue*, 2012 WL 887492, at *8 ("[I]t has long been the law of this State that every contract adverse to the enactments of the legislature, is illegal and void." (citation and internal quotation marks omitted)). Plaintiff contends that because LF Kronoberg can no longer rely on the punitive damages exclusion to deny indemnity coverage for the judgment in the underlying action (its sole reason for denying coverage), there can be no dispute that the insurance policy provides indemnity coverage for the judgment and that LF

Kronoberg's "failure to pay the judgment" breached the insurance contract between LF Kronoberg and Texo.  (Doc. # 72, at 6.)  The court agrees.

The elements of a breach-of-contract claim under Alabama law are: (1) "the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Poole v. Prince*, 61 So. 3d 258, 273 (Ala. 2010) (citation and internal quotation marks omitted).  Elements two, three, and four are not in dispute.  Texo paid its premiums under the insurance policy; the insurance contract (*sans* the punitive damages exclusion) provided coverage for the judgment entered against Texo in the underlying state court action; LF Kronoberg failed to pay the judgment up to the policy limits; and that failure damaged Texo.  Element one is the only element in dispute, which brings the discussion to the assignment issue.

LF Kronoberg contends that even if the court deems the choice clauses unenforceable, Plaintiff is not entitled to summary judgment on his breach-of-contract claim.  It contends that Texo's assignment to Plaintiff of Texo's contractual rights under the insurance contract does not satisfy the requirements of § 8-5-20 of the Alabama Code because the assignment was oral and there is no endorsement "on the face of the contract."  (Doc. # 84, at 2.)  And without a proper assignment, LF Kronoberg contends that Plaintiff cannot show "the existence of a valid contract

binding" it and Plaintiff.[12]  (Doc. # 84, at 2); *Poole*, 61 So. 3d at 273.  Plaintiff, also relying on § 8-5-20 as the statutory source for the assignment, counters that the assignment need not be in writing and that he can show that Texo assigned its "contractual rights to Plaintiff."  (Doc. # 86, at 2.)

The parties' arguments demonstrate that one cannot get the right answer by asking the wrong question.  Section 8-5-20 provides:

> All bonds, writings, and contracts for the payment of money, or other thing, or the performance of any act or duty, are assignable by endorsement so as to authorize an action thereon by each successive endorsee.

But the assignment was not an assignment for a bond, a writing, a contract for the payment of money or other thing, or the performance of an act or duty.  Rather, as the parties maintain, the assignment was an assignment of Texo's rights under a contract, namely, Texo's rights to any causes of action against LF Kronoberg relating to coverage for the underlying state-court judgment, not the assignment of the contract itself.

---

[12] The validity of the assignment is a different issue, of course, from the enforceability of the choice clauses, but the finding that the choice clauses are unenforceable permits the court to reach the assignment issue.  The assignment issue brings up its own conflict of laws issues that, again, neither party has briefed.  Under Alabama conflict-of-laws rules, the assignment is a separate contract distinct from the insurance contract, and the law of the place where the parties made the assignment controls.  *Fourth Nat'l Bank v. Woolfolk*, 125 So. 217, 218 (Ala. 1929).  In their briefing, the parties do not indicate where the assignment was made; however, the parties have relied on Alabama law, and the court will do the same without further analysis on conflict of laws.

LF Kronoberg has not demonstrated that an endorsement is required for the assignment of rights under an insurance policy. Indeed, how does one endorse an assignment of such right? There is no writing to endorse. The parties have failed to identify and argue this distinction between the assignment of a policy and the assignment of the policyholder's rights under the policy after a loss has occurred and regarding that loss (which is an assignment of the policyholder's causes of action). *See generally Williston on Contracts* § 49:126 (4th ed.). It is logical to assume that Texo would have remained insured under the policy after the assignment, and it is equally probable that Mr. Wingard did not become the "insured."

But even if § 8-5-20 governs, LF Kronoberg still has not shown that an endorsement is the sole method for effectuating an assignment, as *Lightsey v. Orgill Brothers & Co.*, 454 So. 2d 1002 (Ala. Civ. App. 1984), illustrates. In *Lightsey*, the Alabama Court of Civil Appeals rejected an interpretation of § 8-5-20 that an endorsement provides the *sole* method for assigning a guaranty. There, the guarantors argued that an assignment of a guaranty was improper because the original creditor who made the assignment did not endorse the guaranty. *See id.* at 1004. But the court observed that statutes and case law had modified the common law prohibiting an assignment of a guaranty so as to "permit an action to be maintained by the assignee of a chose in action or by the real party in interest." *Id.* (emphasis

omitted).  The *Lightsey* court explained further that in *Henley v. Bush*, 33 Ala. 636 (1959), the Alabama Supreme Court

> held the predecessor statute of section 8-5-20, Code 1975, dealing with assignments and endorsements of contracts for the payment of money, change[d] the common law to authorize the action to be brought in the name of the real party in interest in suits on contracts for the payment of money, whether they are assigned, endorsed, in writing, or simply transferred by delivery.

*Id.*  Based on *Henley*, the Alabama Court of Civil Appeals held that the assignee was the real party in interest because it had acquired the assets and liabilities of the original guarantee.  Therefore, the assignee could sue on the guaranty, even though the guaranty was not endorsed.  *See id.* at 1005 (holding that "an endorsement was not required for the assignment of the guaranty").  Thus, to the extent that the assignment by Texo to Plaintiff of its causes of action under the insurance contract is akin to a "contract for the payment of money" under § 8-5-20, the principles in *Lightsey* and *Henley* warrant the conclusion that an endorsement is not the exclusive method for the assignment at issue here.

Absent any binding authority establishing the contrary, the assignment from Texo to Plaintiff could be "written, parol, or otherwise."  *DeVenney v. Hill*, 918 So. 2d 106, 113 (Ala. 2005)  (quoting *Baker v. Eufaula Concrete Co.*, 557 So. 2d 1228, 1230 (Ala. 1990)).  A valid assignment occurs "(1) if the assignor intended to transfer a present interest in the subject matter of the contract, and (2) if the assignor and the

assignee mutually assented to the assignment." *Id.*   LF Kronoberg makes no argument that Texo did not intend to transfer its present rights under the insurance contract for indemnification of the underlying Alabama judgment or that mutual assent between the assignor (Texo) and assignee (Plaintiff) was lacking.  In short, LF Kronoberg has not presented a legal or factual basis for denying Plaintiff's motion for partial summary judgment on the breach-of-contract claim.

Urging a different result, however, LF Kronoberg relies upon *Phillips v. Sellers*, 42 Ala. 658 (Ala. 1868), but that case is distinguishable.  *Phillips* addressed an assignment of a failed contract for the delivery of two bales of cotton, not an assignment of a cause of action arising out of a contract.  *Phillips* did not hold, as LF Kronoberg contends, that an assignment of a cause of action under a contract can only be by endorsement.

## V.  CONCLUSION

The choice clauses in the international insurance contract are unenforceable based upon the principles first pronounced in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), and interpreted in *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998).  Because the choice clauses are unenforceable, Alabama law applies to this action.  Alabama law voids the punitive damages exclusion in the insurance contract as void as against public policy, which means that LF Kronoberg

cannot rely on the exclusion to deny indemnity coverage for the punitive damages award judgment entered by an Alabama state court under the Alabama Wrongful Death Act.  LF Kronoberg breached the insurance contract by failing to provide indemnity.

Lastly, LF Kronoberg has not shown an invalid assignment so as to raise a genuine dispute as to whether Plaintiff can establish a breach-of-contract claim against LF Kronoberg pursuant to an assignment from Texo of its causes of action under the insurance contract.  Accordingly, it is ORDERED as follows:

(1)    LF Kronoberg's motion for reconsideration (Doc. # 84) of the court's Order denying LF Kronoberg's motion to dismiss for improper venue (Doc. # 68) is GRANTED, but the Order is reaffirmed for the reasons set out in this opinion; and

(2)    Plaintiff's motion for partial summary judgment (Doc. # 71) is GRANTED, and summary judgment is entered in favor of Plaintiff on his breach-of-contract action against LF Kronoberg.

DONE this 30th day of September, 2013.

_____/s/ W. Keith Watkins_____
CHIEF UNITED STATES DISTRICT JUDGE